UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Ikeisha Jacobs,<br><br>Petitioner,<br><br>v.<br><br>Nanette Barnes, FCI Waseca Warden,<br><br>Respondent. | Case No. 20-cv-00551 (PAM/HB)<br><br><br>**REPORT AND RECOMMENDATION** |

Ikeisha Jacobs, FCI Waseca, P.O. Box 1731, Waseca, MN, 56093, *pro se*

Ana H. Voss, Ann. M. Bildtsen, and Chad A. Blumenfield, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minneapolis 55415, for Respondent

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Petitioner Ikeisha Jacobs' Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 [Doc. No. 1]. Petitioner is challenging the loss of good conduct time imposed as a result of a prison disciplinary proceeding. Respondent Nanette Barnes has filed a response in opposition to the petition [Doc. No. 12]. The case has been referred to this Court for Report and Recommendation under 28 U.S.C. § 636 and D. Minn. LR 72.1. For the reasons set forth below, the Court recommends that the petition be denied and this action be dismissed with prejudice.

**I.  Background**

Petitioner is currently incarcerated at the Federal Correctional Institution in Waseca,

Minnesota ("FCI Waseca"). (George Decl. ¶ 7 [Doc. No. 15].) During the relevant underlying events, Petitioner was housed at the FCI in Pekin, Illinois. Petitioner is serving an aggregated 120-month term of imprisonment, followed by 5 years of supervised release, for Conspiracy to Distribute and Possess With the Intent to Distribute 100 Grams or More of Heroin and 500 Grams or More of Cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846; Receipt of a Bribe by an Agent or Organization Receiving Federal Funds, in violation of 18 U.S.C. § 666(a)(1)(B); and Using and Carrying a Firearm During and In Relation to a Drug Trafficking Crime, in violation of 18 U.S.C. §§ 924(c) and 924(c)(1)(A)(1). (George Decl. Ex. B at 2-3.) Petitioner has a projected release date of November 7, 2025, via good conduct time release. (George Decl. Ex. B at 1.) Petitioner filed her habeas petition on January 27, 2020. She raises a due process challenge to a disciplinary hearing determination and the resulting loss of good conduct time and other sanctions.

The incident leading to the disciplinary proceeding occurred at approximately 8:50 a.m. on May 24, 2018, when Petitioner was told that she was being assigned to a different room. (George Decl. ¶ 14; Jacobs Ex. D [Doc. No. 14 at 6].) Petitioner became upset and was verbally aggressive to both Unit Secretary M. Nichols and Counselor Dawson. (Jacobs Ex. D.) Petitioner was given a direct order to move and "was not happy." (*Id.*) Around 9:00 a.m., Petitioner yelled at Counselor Dawson and told him he could not change her bunk. (*Id.*) Counselor Dawson replied, "I am the Counselor, it [is] precisely what I do." (*Id.*) At that point, Petitioner approached Counselor Dawson from about 30 feet away, with a closed fist and yelling obscenities; Counselor Dawson

perceived an intent to cause bodily harm. (*Id.*) When Petitioner was about a foot away from Counselor Dawson, inmate CM grabbed Petitioner to prevent her from striking Counselor Dawson. (*Id.*) Counselor Dawson was prepared to use force, if necessary, to protect himself. (*Id.*) Although Petitioner did not touch Counselor Dawson, her physical mannerisms and language were threatening and intimidating, and Counselor Dawson believed she would have assaulted him if CM had not intervened. (*Id.*)

Counselor Dawson wrote an incident report within 24 hours and charged Petitioner with Threatening Another with Bodily Harm. (Jacobs Ex. A.) A copy of the incident report was delivered to Petitioner on May 31, 2018. (*Id.*) Delivery of the incident report was delayed seven working days because Petitioner was placed at the local county jail and the computer systems were down. (George Decl. ¶ 9.)

On June 1, 2018, the Unit Disciplinary Committee (UDC) held an initial hearing on the incident report. (George Decl. ¶ 12, Ex. D at 1.) Program Statement 5270.09 requires an incident report to be heard by a Disciplinary Hearing Officer (DHO) within five workdays, and the warden must approve any delay. (George Decl. ¶ 4, Ex. A at 24.) At the UDC hearing, Petitioner was advised of her rights and given a copy of the incident report; she denied committing the behavior described by Counselor Dawson. (George Ex. D. at 2.) The UDC referred the incident report to a DHO for a hearing. (George Decl. ¶ 12 & Ex. D.)

DHO T. Girard asked for a revised incident report because the facts did not support the charge and the supporting documentation was conflicting. (George Decl. ¶¶ 13, 14, Ex. G.) The charge was revised to Attempted Assault. (George Decl. ¶ 14.)

3

When the revised incident report was delivered, Petitioner was advised of her rights, and she denied the charge. (George Decl. ¶ 15, Ex. H.)

The revised incident report was referred to the UDC, which held an initial hearing on June 26, 2018. (George Decl. ¶ 16, Ex. H.) The UDC again advised Petitioner of her rights, including an opportunity to present witnesses and have a staff representative present, and referred the matter to a DHO. (George Decl. ¶ 17, Exs. H, I.) Petitioner requested a staff representative to be appointed and for inmates CM, CT, and WG to be witnesses at her DHO hearing. (Jacobs Ex. G.)

DHO Girard conducted a hearing on the revised report on June 28, 2018, and issued a written report on August 3, 2018, a copy of which was given to Petitioner on August 6, 2018. (George Decl. ¶ 18, Ex. K.) The DHO called the three witnesses requested by Petitioner, considered a four-page written statement submitted by Petitioner, and considered Petitioner's statements that she had no intention of harming anyone and was heading towards a door, not Counselor Dawson. (George Decl. Ex. K.) Petitioner was represented by staff representative J. Mangold. (George Decl. Ex. J.) Upon consideration of all the evidence, the DHO found there to be some evidence to support the charge of Attempted Assault, namely the written reports and memoranda submitted by three prison staff members. (*Id.*) The DHO imposed sanctions of a loss of 14 days of good conduct time, 14 days of disciplinary segregation, 60 days loss of email, and 60 days loss of visitation. (George Decl. Ex. K at 7.)

Petitioner filed an administrative remedy appeal on October 22, 2018. (George Decl. ¶ 26, Ex. L.) The Regional Director discovered a procedural error and returned the

4

incident report to the DHO.  (George Decl. ¶ 26, Ex. L.)  The procedural error was the lack of a warden's memo excusing the delay of more than five days before the first UDC hearing.  (George Decl. Ex. M.)

Meanwhile, on July 23, 2018, Petitioner was transferred from FCI Pekin to FCI Waseca.  (*Id.*)  The warden at FCI Waseca approved an administrative request to proceed with the UDC/DHO hearing despite the delay.[1]  (*Id.*)  Before the rehearing, Petitioner was advised of her rights, including the opportunity to request witnesses and a staff representative.  (George Decl. ¶ 28, Ex. N.)

DHO J. George conducted a rehearing on February 20, 2019, and issued a written report on March 5, 2019.  (George Decl. ¶ 29, Ex. P.)  Petitioner waived her rights to a staff representative and to call witnesses.  (George Decl. Ex. P.)  Petitioner denied attempting to assault Counselor Dawson and said she was trying to leave the room.  (*Id.*)  Based on all the evidence of record, DHO George concluded the greater weight of the evidence supported the Attempted Assault charge and sanctioned Petitioner with the loss of 14 days good conduct time, 14 days of disciplinary segregation, and 60 days loss of email and visitation privileges.  (George Decl. Ex. P at 3.)

Respondent acknowledges that Petitioner exhausted her administrative remedies.  (Resp't's Mem. at 10 [Doc. No. 12].)

Petitioner contends that she has a protected liberty interest in her good conduct

---

[1] The memo requesting an extension of time limits refers to a five-day requirement between the issuance of an incident report and the UDC hearing and to a one-day requirement between the issuance of a report and delivery of the report.  The Court will presume the warden approved both extensions.

time and that she was entitled to due process in the disciplinary proceedings. (Pet. ¶¶ 14-15.) She identifies the following potential due process violations: (1) the delayed delivery of the incident report, (2) the revision of the original incident report, (3) the DHO's refusal to consider video evidence of the incident, (4) the presence of a biased staff member at a UDC hearing, and (5) delays in the appeal process due to multiple rejections of her submissions. (*Id.* ¶¶ 4, 6, 7, 11, 17, 20; Pet'r's Reply at 1 [Doc. No. 13].) Petitioner seeks to have her good conduct time restored and the incident report expunged, and to be transferred to a prison camp that is closer to her home in North Carolina. (*Id.* ¶¶ 21-24.)

## II.     Discussion

### A.     Standard of Review

"The writ of habeas corpus shall not extend to a prisoner unless . . . [she] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Section 2241 is appropriate where a federal petitioner challenges the execution of a sentence or the length or duration of his confinement." *Jones v. Jett*, No. 10-cv-4201 (MJD/AJB), 2011 WL 5507222, at *2 (D. Minn. Aug. 12, 2011) (citing *Matheny v. Morrison*, 307 F.3d 709, 711 (8th Cir. 2002)).

Not all rights in a criminal case are available in prison disciplinary proceedings, but prisoners retain due process rights under the Constitution. *See Espinoza v. Peterson*, 283 F.3d 949, 951-52 (8th Cir. 2002) (citing *Wolff v. McDonnell*, 418 U.S. 539, 555-58 (1974)). When a loss of good time credits is at stake, due process requires:

> (1) advance written notice of the disciplinary charges; (2) an opportunity,

>when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent v. Hill*, 472 U.S. 445, 454 (1985).  Due process also requires at least "some evidence" to support the findings of the prison decisionmaker.  *Hill*, 472 U.S. at 454.

      **B.**     **Advance Written Notice**

The first due process requirement is that Petitioner be given advance written notice of the disciplinary charges.  *See id.* at 454.  Petitioner concedes she received advance written notice of the charge but argues the delay violated her right to due process.  The original May 31 incident report was delivered seven days after the incident and the June 23 revised incident report was delivered about a month after the incident.  Both of these delays were in violation of Program Statement 5270.09, which advises prisoners they will "ordinarily" receive incident reports within 24 hours of the incident.  (George Decl. ¶ 3, Ex. A at 1.)

But prison regulations in and of themselves do not confer due process rights.  *See Bonner v. Fed. Bureau of Prisons*, 196 F. App'x 447, 448 (8th Cir. 2006); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003).  Even so, the use of the word "ordinarily" indicates that the 24-hour notice period is not mandatory.  *Stanko v. Rios*, No. 08-cv-3102 (JNE/JJG), 2009 WL 1066021, at *6 (D. Minn. Apr. 20, 2009), *aff'd*, 366 F. App'x 706 (8th Cir. 2010).  As long as Petitioner knew the factual basis of the charges against her and had a meaningful opportunity to prepare her defense, due process was satisfied.  *Id.*

7

(commenting that even 24 hours' notice *before* a hearing may satisfy due process). Petitioner has not shown that the delayed delivery of either the original incident report or the revised incident report prevented her from knowing the basis of the charge or from preparing a defense.

As to the revision of the incident report, an incident report that is revised to provide greater specificity does not violate due process. *Carruth v. Fondren*, No. 08-cv-943 (DWF/JJK), 2009 WL 825775, at *5 (D. Minn. Mar. 19, 2009). Here, the incident report was revised to provide more specificity about the incident because the information initially set forth in the fact section did not support the charge and supporting documents contained conflicting information. The charge was also revised to Attempted Assault from Threatening Another with Bodily Harm, but even a charge amended *after* a hearing does not violate the advance notice requirement as long as the prisoner had an opportunity to gather favorable evidence and clarify the actual charge. *Santiago-Lugo v. Warden*, 785 F.3d 467, 476 (11th Cir. 2015). Petitioner has not shown that the amended charge prevented her from marshaling evidence or that she was uncertain about what she was charged with.

### C. Opportunity to Present Evidence

Petitioner next claims her right to due process was violated because DHO George failed to allow her to present video evidence of the incident. According to DHO George, however, Petitioner never asked him for an opportunity to present video evidence. (George Decl. ¶ 34.) Nothing in the record indicates that Petitioner asked DHO George to review video evidence or that DHO George refused such a request

8

### D.     "Some Evidence"

Petitioner mentions in passing that "a disciplinary decision must be supported by 'some evidence,'" but she does not make a specific argument with respect to the evidence in her case. To the extent the Petition can be read to include such an argument, the Court finds there is "some evidence" to support the DHO's findings, namely, Counselor Dawson's description of the incident in the revised incident report; staff members' statements that Petitioner was "verbally aggressive," "screaming", and "yelling" just prior to and shortly after the incident; and Petitioner's admission to being very upset at the time of the incident.

### E.     Biased Staff Member

Petitioner further claims that due process was violated because a biased staff member was involved in the UDC hearing. Petitioner identifies the staff member as Secretary Nichols, who submitted a staff memorandum related to the incident. (Pet'r's Reply at 1-2, 3.) Although it is true that UDC members should not be witnesses to or otherwise significantly involved in an incident, *see* 28 C.F.R. § 541.7(b), Petitioner has not shown that Secretary Nichols was a member of the UDC or that any involvement by Secretary Nichols in the UDC proceedings prejudiced Petitioner. Each of the two UDCs involved in reviewing the incident reports comprised one individual; neither of those individuals was Secretary Nichols. (*See* George Decl. Exs. D, H.) Furthermore, the incident reports were referred by the UDC to a DHO, who independently reviewed the evidence and determined—without any alleged involvement by Secretary Nichols—that the greater weight of evidence supported the charge. Accordingly, the Court concludes

9

that any involvement by Secretary Nichols in the UDCs did not violate due process. *See Ramos v. Fisher*, No. 13-cv-1059 (ADM/HB), 2014 WL 5206716, at *9 (D. Minn. Oct. 14, 2014).

### F. Delays in the Administrative Appeal Process

Finally, Petitioner argues that delays in the appeal process violated her right to due process. Though Petitioner argues her appeal submissions were rejected multiple times, she has not provided any documentation to support this. Moreover, even assuming *arguendo* that a delay occurred, Petitioner has not identified any prejudicial effect. She was not prevented from filing an appeal, and Respondent does not argue that Petitioner failed to exhaust her administrative remedies.

### III. Recommendation

No due process violation occurred in the disciplinary proceedings stemming from the incident on May 24, 2018, and Petitioner is not entitled to the relief requested in the Petition. Therefore, based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Petitioner Ikeisha Jacobs's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 [Doc. No. 1] be **DENIED**; and
2. This action be **DISMISSED WITH PREJUDICE**.

Dated: August 3, 2020         s/ *Hildy Bowbeer*
                              HILDY BOWBEER
                              United States Magistrate Judge

## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under D. Minn. LR 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).